UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-50079-01, -02 |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON |
| vs. | ) | DEFENDANTS' |
| | ) | MOTIONS TO SEVER |
| JOHN GRAHAM, aka | ) | |
| JOHN BOY PATTON, and | ) | |
| VINE RICHARD MARSHALL, aka | ) | |
| RICHARD VINE MARSHALL, aka | ) | |
| DICK MARSHALL, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Defendant John Graham has filed a motion seeking an order from the court

severing his trial from that of co-defendant Vine Richard Marshall's trial.

[Docket 75].  Defendant Richard Marhshall has also filed a motion to sever his

trial from that of Mr. Graham's. [Docket No. 87].  The government resists these

motions.  The district court, the Honorable Lawrence Piersol, referred the

motions to this court for determination pursuant to 28 U.S.C. § 636(b)(1)(A).

**FACTS**

The facts, insofar as they are pertinent to the pending motion, are as

follows.  Count one of the superseding indictment charges Mr. Graham and

Mr. Marshall jointly with the unlawful killing and with aiding and abetting the

killing of Annie Mae Aquash with a firearm, asserting that both defendants are Indians and that Ms. Aquash is also an Indian, in violation of 18 U.S.C. §§ 2, 1111, and 1153.

Count two charges Mr. Graham alone with killing Annie Mae Aquash "willfully, deliberately, and maliciously, with premeditation and malice aforethought," in violation of 18 U.S.C. §§ 2, 1111, and 1152. Count two alleges that Ms. Aquash is an Indian, but does not allege that Mr. Graham is an Indian.

Count three alleges that Mr. Graham killed, and aided and abetted other Indians in killing Ms. Aquash, in violation of 18 U.S.C. §§ 2, 1111, and 1153. The Indians Mr. Graham is alleged to have aided and abetted in count three are Fritz Arlo Looking Cloud, Theda Rose Clarke, and co-defendant Mr. Marshall. Count three does not allege that Mr. Graham is an Indian. Count three is currently the subject of a motion to dismiss by Mr. Graham.

The defendants are currently scheduled to be tried in a joint jury trial beginning February 24, 2009. The government's theory of the case, as asserted by the defendants, is that Mr. Graham and Mr. Marshall acted on orders from decision-makers within the American Indian Movement ("AIM"), to murder Ms. Aquash due to the suspicion that she was a government informant working against AIM. The government alleges that Mr. Marshall provided the firearm and ammunition used to commit the murder and that Mr. Graham carried out the actual murder. Both defendants seek separate trials.

## DISCUSSION

**A.    Severance Under Rule 14(a) Generally**

Rules 8(b) and 14 of the Federal Rules of Criminal Procedure address the propriety of joinder of defendants in a single indictment.  If joinder of defendants is not proper under Rule 8(b), severance becomes mandatory.  Even if severance is not mandated by Rule 8(b), the court has discretion to grant severance under Rule 14 if joinder of the defendants appears to prejudice a defendant or the government.  United States v. Davis, 534 F.3d 903, 916 (8th Cir. 2008).  However, once it is determined that defendants are properly joined under Rule 8(b), "[t]he presumption against severing properly joined cases [under Rule 14] is strong."  United States v. Ruiz, 412 F.3d 871, 886 (8th Cir. 2005).  The preference for joint trials is in order to give "the jury the best perspective on all of the evidence and therefore increase[ ] the likelihood of a correct outcome."  United States v. Flores, 362 F.3d 1030, 1039 (8th Cir. 2004) (quoting United States v. Darden, 70 F.3d 1507, 1528 (8th Cir. 1995)).  In addition, courts recognize that joint trials conserve scarce time and resources.  United States v. Hively, 437 F.3d 752, 765 (8th Cir. 2006).  "Under Fed. R. Crim. P. 14(a), the issue of severance is entrusted to the sound discretion of the trial judge."  Id. at 765 (internal citation omitted).

Mr. Graham concedes that he and Mr. Marshall are properly joined under Fed. R. Crim. P. 8(b) and does not seek severance pursuant to that rule. Mr. Marshall similarly raises no argument that joinder under Rule 8(b) is

3

improper in this case.  Rather, the defendants' motions seek severance on the basis of Fed. R. Crim. P. 14(a).  A defendant who seeks severance under Rule 14 must show "real prejudice."  <u>Davis</u>, 534 F.3d at 916.  "Real prejudice" consists in showing (1) that the moving defendant's defense "is irreconcilable with that of his co-defendant or (2) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants."  <u>Id.</u> at 916-917 (quoting <u>United States v. Mickelson</u>, 378 F.3d 810, 817-818 (8th Cir. 2004)).

"Severance is not required merely because evidence that is admissible only against some defendants may be damaging to others, . . ."  <u>Mickelson</u>, 378 F.3d at 818.  "Nor is it enough for a defendant to claim, . . . that he needed a separate trial in order to call a co-defendant as a witness.  He must show that it is likely his co-defendant actually would have testified and that this testimony would have been exculpatory."  <u>Id.</u> (citing <u>United States v. Delpit</u>, 94 F.3d 1134, 1143-1144 (8th Cir. 1996)).  "Generally, the risk that a joint trial will prejudice one or more of the defendants 'is best cured by careful and thorough jury instructions.' "  <u>Davis</u>, 534 F.3d at 916-917 (quoting <u>Mickelson</u>, 378 F.3d at 818; and citing <u>Zafiro</u>, 506 U.S. at 537).

Mr. Graham raises three arguments in favor of severance under Rule 14: (1) that his confrontation rights under the Sixth Amendment will be violated by a joint trial because statements of co-defendant Richard Marshall which are inculpatory to both defendants will be admitted at trial and Mr. Marshall is not

4

expected to testify;[1] (2) that evidence that would otherwise be inadmissible at Mr. Graham's trial, i.e. Mr. Marshall's inculpatory statements, would be admissible at a joint trial; and (3) that Mr. Graham and Mr. Marshall will present mutually exclusive or antagonistic defenses.

Mr. Marshall argues that he should be granted a separate trial because (1) evidence that will be admissible against Mr. Graham in a joint trial would be inadmissible against Mr. Marshall in a separate trial; and (2) that Mr. Marshall will experience "spill-over" prejudice due to the fact that the government's case against Mr. Graham is much stronger than the government's case against Mr. Marshall.  Each argument will be discussed in turn.

## B.      Severance Under Bruton

### 1.      Supreme Court Cases

The prow of Mr. Graham's argument in favor of severance is that his confrontation rights will be violated by the admission into evidence of out-of-court statements by Mr. Marshall that inculpate Mr. Graham.  Mr. Graham assumes that Mr. Marshall will not testify, an assumption that seems warranted under the current state of the pleadings in this case.  See footnote 1, supra.

---

[1]Mr. Marshall agrees that Mr. Graham's right to confrontation of his accusers would be violated by a joint trial in which statements of Mr. Marshall are admitted which inculpate Mr. Graham.  Implicit in this agreement by Mr. Marshall is a tacit admission that Mr. Marshall does not intend to testify at trial.  Otherwise, Mr. Graham's confrontation rights would not be implicated.

The United States Supreme Court established in <u>Bruton v. United States</u>, 391 U.S. 123 (1968), that a defendant's confrontation rights under the Sixth Amendment are violated by the admission of a non-testifying codefendant's confession that implicates the defendant. <u>Id.</u> at 137.[2]  In <u>Bruton</u>, Bruton and a co-defendant, Evans, were tried together for armed postal robbery. <u>Id.</u> at 124-125.  A confession by Evans inculpating both Evans and Bruton was admitted at the trial. <u>Id.</u> at 125-126.  Evans never testified and the jury was instructed that it was not to consider Evans' confession in determining whether Bruton was guilty. <u>Id.</u>  Despite the limiting instruction, Bruton argued that the introduction of Evans' confession violated his confrontation rights under the Sixth Amendment. <u>Id.</u>  The Court agreed and reversed for a new trial. <u>Id.</u> at 136-137.

The Supreme Court declined to further extend <u>Bruton</u> in <u>Richardson  v. Marsh</u>, 481 U.S. 200 (1987).  In that case, the Court held that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession that was redacted to eliminate the defendant's name and any other reference to the defendant's existence. <u>Id.</u> at 211.

---

[2]The pertinent portion of the Sixth Amendment reads as follows: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him;" <u>See</u> U.S. Const. amend. VI.  The Supreme Court has held that the right of confrontation includes the right to cross-examine witnesses.  <u>See</u> <u>Pointer v. Texas</u>, 380 U.S. 400, 404, 406-407 (1965).

Marsh and a co-defendant, Williams, were tried together for murder and assault, over Marsh's objection to a joint trial.  Id. at 202.  The victim of the assault testified at trial, identifying Marsh and Williams as the murderers and her assailants.  Id.  Williams had confessed after his arrest and his statement was also introduced at trial, with all reference to Marsh redacted.  Id. at 203-204.  Williams' confession largely corroborated the victim's testimony.  Id.  Williams did not testify at the trial and the district court instructed the jury that they were not to use Williams' confession in any way against Marsh.  Id. at 204.  Marsh herself then testified and placed herself at the scene of the crime, testifying that she had no forewarning that Williams was going to commit any crime.  Id. at 204.  Marsh was convicted of two counts of felony murder.  Id. at 205.

The Court began by noting that "a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant."  Id. at 207.  The Court also acknowledged that the situation in Bruton was an exception to this general rule where the nontestifying codefendant's confession expressly implicated the defendant.  Id. at 208.  Under these circumstances, the "powerfully incriminating" confession could not fail to infect the confrontation rights of the nonconfessing codefendant.  Id.

7

The Court distinguished <u>Bruton</u>, however, from the facts in Marsh's case because in Marsh's case, the redacted confession did not implicate Marsh at all, but only became incriminating when linked with other admissible evidence introduced at trial, namely Marsh's own testimony and that of the assault victim.  <u>Id.</u>  The fact that the confession itself did not incriminate Marsh, coupled with the court's limiting instruction to the jury not to consider Williams' confession in any way as to Marsh, made this case different.  <u>Id.</u>  The Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."  <u>Id.</u> at 211.

In a subsequent case, the Court had reason to refine its position as to <u>Bruton</u> and <u>Richardson</u>.  <u>See</u> <u>Gray v. Maryland</u>, 523 U.S. 185 (1998).  In <u>Gray</u>, Gray and a co-defendant, Bell, were indicted for murder and tried jointly.  <u>Id.</u> at 188.  Bell's confession was admitted at trial in a redacted version in which Gray's name was removed and the word "deleted" or "deletion" was substituted. <u>Id.</u> at 188-189.  After Bell's confession was read into the record by a detective, the prosecutor asked, "after [Bell] gave you that information, you subsequently were able to arrest Mr. Kevin Gray; is that correct?"  <u>Id.</u>  The detective responded "yes."  <u>Id.</u> at 189.  Other witnesses testified at trial indicating that both Bell and Gray were involved in the murder.  <u>Id.</u>  Bell never testified,

although Gray testified, denying any involvement.  Id.  The trial court instructed the jury that it should consider Bell's confession only against Bell and not as any evidence against Gray.  Id.  Both defendants were convicted.  Id.  Gray argued that the admission of Bell's confession violated his confrontation rights under Bruton.  Id.

The Court agreed.  Id. at 197.  Distinguishing Richardson, where the confession was redacted to remove all reference to Marsh and all indication that anyone other than the confessor and a third party had participated in the crime, the confession in Gray, even though it was redacted, clearly indicated the participation of another person, though that person remained unnamed.  Id. at 191-192.  The Court stated that, "Redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble Bruton's unredacted statements that, in our view, the law must require the same result."  Id. at 192.

As an example, the Court examined the confession introduced at Gray's trial: "Question:  Who was in the group that beat [the victim]?  Answer:  Me, deleted, deleted, and a few other guys."  Id. at 196.  Although this redaction of the codefendant's statement created Bruton problems, the Court suggested an alternative redaction of the same statement that would not be problematic: "Question:  Who was in the group that beat [the victim]?  Answer:  Me and a few

other guys." Id.  The goal is to edit the statement so that not only are all incriminating remarks of the nonconfessing codefendant removed, but to do so in a way so that the statement does not obviously appear to have been redacted. Id. (citing Richardson, 481 U.S. at 203).

Although not dealing with the issue of severance, the United States Supreme Court decided Crawford v. Washington, 541 U.S. 36 (2004), after the Gray decision.  The Crawford decision further interprets the Confrontation Clause, holding that "out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable." Crawford, 541 U.S. at 36.

The Crawford decision addressed the issue of whether out-of-court hearsay statements made by an unavailable witness, rather than a co-defendant as in Bruton, were admissible at trial.  Crawford, 541 U.S. 36.  The facts of Crawford were as follows.  Petitioner Michael Crawford stabbed a man who allegedly attempted to rape his wife, Sylvia Crawford.  Id. at 38.  At trial, Mrs. Crawford did not testify because of the state marital privilege, thereby making her an unavailable witness.  Id. at 40.  Under state law, a spouse's out-of-court statements were admissible under a hearsay exception.  Id.  Thus, the state sought to introduce into evidence out-of-court, tape-recorded statements Mrs. Crawford made to the police describing the events leading up to the

10

assault and the assault itself.  Id.   Because of Mrs. Crawford's involvement in the assault, the state relied upon the hearsay exception for statements against penal interest.  Id.

The trial court allowed Mrs. Crawford's out-of-court statements to be played to the jury, relying on the rule in Ohio v. Roberts, 448 U.S. 56 (1980). Crawford, 541 U.S. at 40.  In Roberts, statements made by an unavailable witness against a criminal defendant were admissible at trial if the statements bore " 'adequate indicia of reliability,' " that is, statements "must either fall within a 'firmly rooted hearsay exception' or bear 'particularized guarantees of trustworthiness.' " Id. (quoting Roberts, 448 U.S. at 66).  The trial court in Crawford admitted Mrs. Crawford's out-of court statements on the latter ground.  Crawford, 541 U.S. at 40.  Mr. Crawford objected on the grounds that admitting these statements violated his "federal constitutional right to be confronted with the witnesses against him."  Id. (internal quotations omitted).

On appeal, the Supreme Court rejected the reliability test articulated in Roberts, holding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes:  confrontation."  Id. at 68-69.  The Crawford Court held that "out-of court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses, regardless of

11

whether such statements are deemed reliable by the court." Id. at 36 (emphasis added).

A key consideration in Crawford is whether the out-of-court statements are testimonial. The constitutional protections of the Confrontation Clause afforded to a defendant only apply when witnesses against him " 'bear testimony.' " Id. at 51. " 'Testimony,' in turn is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " Id. (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). Although the Court in Crawford did not provide an exhaustive list of statements that are deemed testimonial, it stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Crawford, 541 U.S. at 68. Although the Court did not comprehensively define "testimonial," it stated that evidence is testimonial when "made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial." Id. at 51.

The Supreme Court again interpreted the confrontation clause in Davis v. Washington, distinguishing between testimonial and nontestimonial statements in the context of police interrogations. Davis v. Washington, 547 U.S. 813, 817 (2006). The Davis Court held as follows:

> Statements are nontestimonial when made in the course of police
> interrogation under circumstances objectively indicating that the

12

> primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution.

Id. at 822.  The Davis Court made clear that most testimonial statements will involve formal statements, like sworn testimony in a prior judicial proceeding or formal deposition under oath.  Id. at 825-826.  The Court also stated that some statements are "clearly nontestimonial," like statements made unwittingly to a government informant or statements from one prisoner to another.  Id. at 825. See also United States v. Watson, 525 F.3d 583, 589 (7th Cir. 2008) (holding that statements made unwittingly to a confidential informant and recorded by the government are not "testimonial") (citing United States v. Underwood, 446 F.3d 1340, 1347-1348 (11th Cir. 2006); United States v. Hendricks, 395 F.3d 173, 182-184 (3d Cir. 2005); United States v. Saget, 377 F.3d 223, 229-230 (2d Cir. 2004)).

The Davis Court also distinguished between interrogations "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator" and interrogations intended to "describe current circumstances requiring police assistance."  Davis, 547 U.S. at 826-827.  The former were characterized by the Court as "testimonial," while the latter were characterized as "nontestimonial."  Id.

Comparing the statement of Crawford's wife in <u>Crawford</u>, with the 911 caller in <u>Davis</u>, the Court distinguished them on three grounds:  (1) the <u>Crawford</u> statement was describing past events some hours after the events had occurred while the <u>Davis</u> statement was describing events as they were actually happening; (2) the declarant in <u>Davis</u> was facing an ongoing emergency for which help was being sought and the wife in <u>Crawford</u> was not; and (3) the nature of what was asked and answered during the statement in <u>Davis</u> made clear that the elicited statements were necessary to resolve the present emergency, whereas the questions in <u>Crawford</u> were asked to learn what had happened in the past.  <u>Id.</u> at 827.

### 2.    Eighth Circuit Cases

The Eighth Circuit has had several occasions to apply <u>Bruton</u>, <u>Richardson</u>, <u>Gray</u>, and <u>Crawford</u>.  In <u>United States v. Edwards</u>, 159 F.3d 1117 (8th Cir. 1998), <u>cert. denied</u>, 528 U.S. 825 (1999), five defendants were tried together for aiding and abetting an arson which resulted in the deaths of six firefighters.  <u>Id.</u> at 1121-1122.  During the seven years between the arson and the indictment of the defendants, all five defendants had made incriminating statements to some 59 other witnesses.  <u>Id.</u> at 1124.  None of the defendants testified at trial.  <u>Id.</u>  The district court admitted the incriminatory statements and addressed the <u>Bruton</u> problem by replacing inculpatory references to other co-defendants with neutral pronouns such as "we," "they," "someone," and "others."  <u>Id.</u>  The court instructed the jury that it was to consider each out-of-

14

court statement only against the person who made the statement and not against any of the four other co-defendants.  Id.  The Eighth Circuit held that this approach did not violate the defendants' confrontation rights under Bruton. Id. at 1124-1128.

The defendants argued that the use of the pronouns violated the rule announced in Gray as the jury could have understood the pronouns to refer to the defendants.  Id. at 1125.  The Eighth Circuit held that the district court's approach complied with the rule announced in Gray because the statement in Gray used the word "deleted" and thus emphasized the fact that the statement had been redacted, while in Edwards, the use of the neutral pronouns did not draw attention to the redaction.  Id. at 1126.  Also, the court noted that the trial included a large cast of characters from the defendants' neighborhood who were connected to the defendants in various ways and that some of the statements inculpated non-parties to the case.  Id.  Thus, the court held that these facts weakened any association the jury might have been wont to draw between the use of the pronouns and the guilt of any non-declarant defendant.  Id.  Finally, the court noted that the redaction favored by the Gray Court, "me and a few other guys" had the same effect as the redactions in Edwards where pronouns were used.  Id.

In United States v. Williams, 429 F.3d 767 (8th Cir. 2005), the Eighth Circuit considered the admission of a co-defendant's confession in a joint trial

15

for conspiring to distribute marijuana and crack cocaine.  Id. at 769-770, 772-775.  The court stated that, "[i]n assessing whether a case falls within the Bruton rule as in Gray or outside it as in Marsh, the Supreme Court looks at whether the context is one in which the risk is too great that the jury will not or cannot follow the cautionary instruction to consider the statement solely against the declarant."  Id. at 773 (citing Gray, 523 U.S. at 190-191).

In Williams' case, the nondeclarant defendant's name was mentioned more than forty times in the co-defendant's statement.  Id.  The statement was redacted by replacing the nondeclarant's name with the pronoun "someone" over forty times.  Id.  In this example, the court opined that the method of redaction of the statement "made it obvious that a name had been redacted."  Id. at 774.  "The replacements were not seamlessly woven into the narrative as in [United States v.] Logan, [210 F.3d 820 (8th Cir. 2000) (en banc)], and the neutral pronoun 'someone' may have lost its anonymity by sheer repetition.  It may well have been clear to the jury that the statement had obviously been redacted and that the 'someone' of the statement was" the nondeclarant co-defendant.  Id.[3]  See also, United States v. Heppner, 519 F.3d 744, 751-752 (8th Cir. 2008) (rejecting Bruton argument where statement was redacted to remove nondeclarant's name and any language that could be construed as a reference

_____

[3]The Williams court ultimately affirmed the defendant's conviction despite the suggestion that his confrontation rights might have been violated because the error, if any, was deemed harmless.  See Williams, 429 F.3d at 774.

to him and the district court instructed the jury to consider the confession only against the declarant defendant).

In an Eighth Circuit case interpreting <u>Crawford</u>, but not <u>Bruton</u>, the court further clarified the characteristics of testimonial statements.  <u>United States v. Bordeaux</u>, 400 F.3d 548 (8th Cir. 2005).  In <u>Bordeaux</u>, government officials referred a child victim of sexual abuse to a center for evaluation.  <u>Bordeaux</u>, 400 F.3d at 554.  A forensic interviewer questioned the child even before she had been examined by a physician.  <u>Id.</u>  The interview was taped, and two copies were made, one of which was provided to the police.  <u>Id.</u>

The court found that the hearsay statements of the victim were testimonial because the interview was the equivalent of a police interrogation. <u>Id.</u> at 556.  The court reasoned that "[a] police interrogation is formal (<i>i.e.</i>, it comprises more than a series of offhand comments-it has the form of an interview), involves the government, and has a law enforcement purpose." <u>Id.</u> The court stated that "the evidence requires the conclusion that the purpose [of the interview] was to collect information for law enforcement." <u>Id.</u> " That [the victim's] statements may have also had a medical purpose does not change the fact that they were testimonial, because <u>Crawford</u> does not indicate, and logic does not dictate, that multi-purpose statements cannot be testimonial." <u>Id.</u>

The Eighth Circuit reached the opposite conclusion in another case also interpreting <u>Crawford</u>, but not <u>Bruton</u>.  <u>See</u> <u>United States v. Clemons</u>, 461 F.3d

17

1057 (8th Cir. 2006).  The court held in <u>Clemons</u> that statements made by a shooting victim in response to a police officer's questions were nontestimonial because "[t]he circumstances, viewed objectively, indicate that the primary purpose of [the officer's] questions was to enable him to assess the situation and to meet the needs of the victim."  <u>Clemmons</u>, 461 F.3d at 1060-1061 (citing <u>Davis</u>, 547 U.S. at 822).  The Eighth Circuit has also held that casual remarks made to an acquaintance do not constitute a formal, testimonial statement and, thus, fall outside the protection of the confrontation clause under <u>Crawford</u>. <u>See also</u> <u>United States v. Hyles</u>, 521 F.3d 946, 959-960 (8th Cir. 2008) (holding <u>Crawford</u> inapplicable to statements made to defendant by one third party that defendant had hired to kill a witness); <u>United States v. Lee</u>, 374 F.3d 637, 645 (8th Cir. 2004) (co-defendant's confession to his mother was nontestimonial because statement was made over a year before the mother had any contact with law enforcement and was prompted when mother observed evidence of crime in co-defendant's possession).

In another case decided just four months ago, the Eighth Circuit considered whether two defendants' <u>Bruton</u> rights were violated when the prosecutor, during closing argument, used a display that showed both defendants' redacted statements side by side on a large screen and the prosecutor proceeded to point out the similarities between the two statements. <u>United States v. Davis</u>, 534 F.3d 903, 914-916 (8th Cir. 2008).  Although the

18

defendants did not take issue with the method of redacting each of their statements nor with the district court's limiting instructions to the jury about using each statement only against the declarant defendant, nevertheless they argued on appeal that the prosecutors use of the statements in closing in the manner in which he did invited the jury to use the statements improperly against the non-declarant defendants.  Id. at 915.  Because the defendants had not objected during the prosecutor's closing argument, the Eighth Circuit would reverse only "under exceptional circumstances."  Id. at 916.

Predictably, given the standard of review, the Eighth Circuit affirmed, but made a point of indicating that it did "not condone the manner in which the prosecutor utilized the previously undisclosed demonstrative aid, . . .".  Id. 916-917.  In affirming, however, the court noted that neither statement referred to the other defendant or to any other person directly and, therefore, "the admission of the statements was not an obvious error under Richardson."  Id. at 915.

Finally, the Eighth Circuit has just had occasion to address the intersection between Bruton and Crawford in United States v. Spotted Elk, 548 F.3d 641 (8th Cir. 2008).  In Spotted Elk, five co-defendants, including Colin Spotted Elk and Geraldine Blue Bird, were tried together on a charge of conspiracy to distribute cocaine and other related charges.  Id. at 646-647.  Eleven other co-defendants did not proceed to trial, but rather entered guilty

19

pleas.  Id. at 647, 647 n.2, and 646-650.   At trial, evidence was introduced of an out-of-court statement of Blue Bird's that implicated Spotted Elk.  Id. at 662. A third co-defendant, Dawnee Frogg, who did not go to trial, testified that Blue Bird had made the statement to Frogg.  Id.  Although Frogg testified, Blue Bird did not.  Id.  Spotted Elk argued that the introduction of Blue Bird's out-of-court statement implicating him violated his confrontation rights under Bruton. Id.

The Eighth Circuit held that Crawford had further clarified the scope of the confrontation clause discussed in Bruton.  Id.  The court held that, after Crawford, "[i]t is now clear that the Confrontation Clause does not apply to non-testimonial statements by an out-of-court declarant."  Id. (citing Davis, 547 U.S. at 822; United States v. Singh, 494 F.3d 653, 658-659 (8th Cir. ), cert. denied, 128 S. Ct. 528 (2007) (holding that co-conspirators' statements in furtherance of the conspiracy were not testimonial under Crawford)).  Because Blue Bird's out-of-court statements were made to co-defendant Frogg, the court held that the statements were not testimonial and, hence, did not fall within the purview of the Sixth Amendment's confrontation clause.  Id.

There is some question as to how to interpret the holding of the Eighth Circuit in Spotted Elk.  On the one hand, the court's decision might be interpreted sweepingly to mean that all statements made to persons other than

police are "nontestimonial."[4]  However, this is contrary to the court's holding in

Bordeaux, in which the court concluded that statements made to a person other

than the police were "testimonial."  Bordeaux, 400 F.3d at 556.

Furthermore, a footnote by the Davis Court cautions against such a

sweeping and undiscerning analysis.  In that footnote, the Court stated that:

> Our holding refers to interrogations because, as explained below,
> the statements in the cases presently before us are the products of
> interrogations–which in some circumstances tend to generate
> testimonial responses.  ***This is not to imply, however, that
> statements made in the absence of any interrogation are
> necessarily nontestimonial.***  The Framers were no more willing to
> exempt from cross-examination volunteered testimony or answers
> to open-ended questions than they were to exempt answers to
> detailed interrogation. . . .  And of course even when interrogation
> exists, it is in the final analysis the declarant's statements, not the
> interrogator's questions, that the Confrontation Clause requires us
> to evaluate.

Davis, 547 U.S. at 822 n.1 (emphasis supplied).

Taken together, all of the above case law should be interpreted to mean

that Bruton applies only when the out-of-court statement sought to be admitted

---

[4]The Spotted Elk court had, previous to the discussion of the Bruton
issue, embarked on an extended discussion of the admissibility of statements
of co-conspirators under Fed. R. Evid. 801(d)(2)(E).  Spotted Elk, No. 07-1914,
2008 WL 4999125 at *15.  The court found that the twenty challenged
statements were properly admitted by the district court pursuant to Rule
801(d)(2)(E).  Id.  Therefore, the truncated discussion on the Bruton issue may
simply be an indication by the court that statements of co-conspirators that fit
within the definitional exclusion from hearsay under Rule 801(d)(2)(E) are
categorically nontestimonial under Crawford and Bruton.  Id. at *28-30.  See
also United States v. Lee, 374 F.3d 637, 644 (8th Cir. 2004) (statements by a
conconspirator in furtherance of the conspiracy are not testimonial in nature
under Crawford).

is "testimonial" and the declarant will not be testifying.  Out-of-court statements
are "testimonial" when they are the product of a formal interview, the
government was involved in obtaining the statement, and the government had a
law enforcement purpose.  <u>Bordeaux</u>, 400 F.3d at 556.  As in <u>Bordeaux</u>, this
may encompass persons who elicit statements from a targeted person at the
behest of the government, even though the eliciter of the statement is not a
government agent himself.  <u>Id.</u>  Statements are also testimonial when they are
describing past events for the purpose of providing evidence to convict someone
of a crime.  <u>Davis</u>, 547 at 826-827.  However, as indicated by the <u>Davis</u> Court, it
does not include statements made unwittingly to confidential informants or
fellow prisoners.  <u>Davis</u>, 547 U.S. at 825.  It now remains to apply <u>Bruton</u>,
<u>Crawford</u>, and their progeny to the statements at issue in this case.

       **3.**     **Application of the Law to the Statements Proffered in this Case**

       Prior to ruling on the instant motion, the court directed the government to
submit to the court *in camera* any out-of-court statements of either defendant
that it intended to introduce at trial.  <u>See</u> Fed. R. Crim. P. 14(b); Docket No. 77.
The government submitted nine separate statements by Mr. Graham and
Mr. Marshall.  Reviewing those statements, they can be categorized into three
general types: (1)  statements made unwittingly to witnesses who were
cooperating with the government; (2)  statements to members of the media; and

(3) statements made directly to police or other clearly official government actors. Each type of statement will be analyzed separately.[5]

### a.    Statements unwittingly made to cooperating witnesses

One category of statements at issue are statements unwittingly made by both defendants to cooperating government witnesses, two of which are known by the code names of "Maverick" and "Sierra."  The <u>Davis</u> Court characterized statements unwittingly made by a defendant to a government informant as "clearly nontestimonial."  <u>Davis</u>, 547 U.S. at 825.  The <u>Davis</u> Court cited in support of this assertion the case of <u>Bourjaily v. United States</u>, 483 U.S. 171 (1987).  The <u>Bourjaily</u> case concerned the proper procedure for the admissibility of a co-conspirator's statements in furtherance of the conspiracy under Fed. R. Evid. 801(d)(2).  <u>Id.</u> at 173.   The co-conspirator statement at issue was made by a co-defendant to an informant who was working for the FBI.  <u>Id.</u> 173-174.[6]

Since <u>Crawford</u> was decided, at least four courts of appeals have directly addressed the issue of whether a statement made by a defendant unwittingly to a government informant is "testimonial."  All four courts have held that such statements are *not* testimonial.  See <u>United States v. Watson</u>, 525 F.3d 583, 589

---

[5]The nine statements are being filed under seal concurrently with this opinion so as to facilitate appellate review of the decision made in this opinion should any party wish to pursue such review.

[6]The petitioner in <u>Bourjaily</u> raised a Confrontation Clause argument which the Court addressed, but that issue was resolved under the old <u>Ohio v. Roberts</u> framework instead of <u>Crawford</u>, so that portion of the <u>Bourjaily</u> opinion is not helpful to the resolution of the issues in this case.

(7th Cir. 2008); United States v. Underwood, 446 F.3d 1340, 1347-1348 (11th Cir. 2006); United States v. Hendricks, 395 F.3d 173, 182-184 (3d Cir. 2005); United States v. Saget, 377 F.3d 223, 229-230 (2d Cir. 2004).  The Eighth Circuit has apparently not yet addressed this precise issue.[7]

The Third Circuit, in Hendricks, shed some light on its holding.  Although the confidential informant clearly is acting on behalf of the government when he elicits the defendant's statement and the evidence is clearly intended to be used for the prosecution of the defendant (as the court observed, obtaining evidence for use in prosecution is the raison d'etre for the informant's actions), whether the statement is "testimonial" is to be judged from the standpoint of the declarant–here, the defendant–not from the standpoint of the informant. Hendricks, 395 F.3d at 182-183.  Thus, although arguably the informant's own statements within the conversation may be excluded as "testimonial" because he is aware that the statement has a formal purpose, the damaging admissions

_____

    [7]In United States v. Rodriguez, 484 F.3d 1006 (8th Cir. 2007), Rodriguez argued on appeal that the admission at his trial of a cooperating witness's account of a conversation she had had with Rodriguez, which implicated Rodriguez, violated his Confrontation Clause rights.  Id. at 1013-1014.  The court did not address whether Rodriguez's statement to the cooperating witness or the cooperating witness's own statement were "testimonial."  Id. Instead, the court held that the statement had not been introduced to prove the truth of the matter asserted and, therefore, the Confrontation Clause was not implicated.  Id.  Furthermore, the cooperating witness testified, thereby avoiding Confrontation Clause issues.  Id.

made by the defendant may not be so excluded.[8]  Id.  For the statement to be "testimonial," the **declarant himself** must expect that the statement will be used as evidence in a later formal proceeding.  Id.  See also  United States v. Udezor, 515 F.3d 260, 268-269 (4th Cir. 2008) (holding that whether an out-of-court  statement is "testimonial" must be judged from the point of view of the declarant at the time the statement was made) (citing the following cases for the same proposition:  United States v. Maher, 454 F.3d 13, 21 (1st Cir. 2006); United States v. Ellis, 460 F.3d 920, 926 (7th Cir. 2006); United States v. Summers, 414 F.3d 1287, 1302 (10th Cir. 2005); United States v. Hinton, 423 F.3d 355, 360 (3d Cir. 2005); Saget, 377 F.3d at 228)).

This court concludes that the Eighth Circuit would follow the four circuits which have addressed this issue thus far and hold that statements made unwittingly by a defendant to a confidential informant or, in this case, a cooperating witness, are not "testimonial" under Crawford.  Judging from the point of view of Mr. Marshall and Mr. Graham, the defendant-declarants in this case had no expectation at the time they made these statements to cooperating witnesses that they were formal statements which might be used as evidence in a later proceeding.  Accordingly, they do not trigger the protections of the

_____

[8]For an analysis of the admissibility of *the informant's* statement in a conversation with the defendant, see United States v. McGee, 529 F.3d 691, 697-698 (6th Cir. 2008) (police officer's testimony containing a hearsay statement from the informant that "Zookie" was in fact the defendant, McGee, was barred by the Confrontation Clause under Crawford).

Confrontation Clause under <u>Crawford</u> or <u>Bruton</u>.  <u>Davis</u>, 547 U.S. at 825;

<u>Spotted Elk</u>, 548 F.3d at 662; <u>Watson</u>, 525 F.3d at 589.

>  **b.    Interviews with the media**

Two statements by Mr. Graham can be categorized as interviews with the

media.  On November 8, 2000, Mr. Graham made a recorded statement in an

interview with "Fifth Estate," and again on October 18, 2006, Mr. Graham made

recorded statements to "Native Youth Movement."  The government breezily

asserts that Mr. Graham's statements to journalists are non-testimonial

statements to which Confrontation Clause protections do not apply, but the

government cites no authority which supports this factual variation on the

<u>Crawford</u> analysis.  Research by the court has not revealed any published

decision in which a court has analyzed whether a statement made to a

journalist is "testimonial" under <u>Crawford</u>.

The two statements that Mr. Graham made in this category differ in the

context in which they were made in this regard:  the statement made in 2000

was *prior* to the first indictment charging anyone with a crime in connection

with Ms. Aquash's death; the statement in 2006 was made *after* the 2003

indictment was filed charging Mr. Graham and Looking Cloud with murder.

As to the first statement, <u>Crawford</u> teaches that a statement must be a

"solemn declaration or affirmation made for the purpose of establishing or

proving some fact" in order to be considered "testimonial."  <u>Crawford</u> 541 U.S.

at 51.  Statements are testimonial where they are given under circumstances

that lead the declarant to believe that "the statements would be available for use at a later trial." Id. at 51. The context of the statement given by Mr. Graham to the "Fifth Estate" as well as its timing leads the court to conclude that the statement was not testimonial.

The "Fifth Estate" interview did not involve the government or a government actor and there was no apparent government purpose for the statement. Furthermore, the timing of the statement is informative. In 2000, the murder of Ms. Aquash was a quarter of a century old and no one had ever been charged with that crime. At the time he gave the statement, then, Mr. Graham or any reasonable person in his place would probably not have expected the statement to be used as evidence at a later trial.

The 2006 statement is not so easily analyzed, however. In 2006, at the time Mr. Graham made his statement to "Native Youth Movement," he had already been indicted along with Looking Cloud for the murder of Ms. Aquash.[9] Also, Mr. Graham knew that his statement was being recorded. Thus, the possibility that his statement might be used as evidence at a later trial against him had to have been very real to Mr. Graham at the time he was making the statement.

The 2006 statement lacks, however, any government purpose, government agent, or government involvement. Bordeaux, 400 F.3d at 556.

_____

[9]Mr. Graham was in Canada at the time, resisting the efforts of the United States to extradite him in order to try him on the murder charge.

The court notes that nothing in Crawford or Davis requires that a statement involve the government in order to be "testimonial."  See Davis, 547 U.S. at 825-826; Crawford, 541 U.S. at 51-68.  The Davis Court focused on statements that were "formal" in the sense that they were not conversational and statements that focused on establishing past facts as evidence of a crime as opposed to describing present circumstances.  Davis, 547 U.S. at 825-826.  In fact, the Davis Court seemed at pains to hold open the possibility of a statement nevertheless being considered "testimonial" in the absence of government questioning.  Id. at 822 n.1.

However, the Bordeaux case in the Eighth Circuit emphasized the fact that although the person to whom the statement was being made was not a government actor, that person was nevertheless knowingly furthering a government investigative purpose.  Bordeaux, 400 F.3d at 556.  Regardless of whether either the "Fifth Estate" statement or the "Native Youth Movement" statement involved a government purpose, the court concludes ultimately that Bruton is not implicated by these statements as neither statement by Mr. Graham inculpates Mr. Marshall in any way.  Graham neither refers to Marshall directly, nor refers to his existence in the involvement in the murder of Ms. Aquash.  For these reasons, the court denies the motions to sever based on this category of statements.

### c.   Grand jury testimony and law enforcement interrogation

The last category of statements concerned in this case are Mr. Marshall's testimony before the grand jury and statements given by both defendants to Robert Ecoffey, a law enforcement officer, at different times and locations. Under Crawford and its progeny, these are clearly "testimonial" statements which trigger the protections of the confrontation clause. Crawford, 541 U.S. at 68.

Although Mr. Graham's statement to Mr. Ecoffey is "testimonial," it does not implicate Mr. Marshall. Mr. Marshall is not mentioned by name, nor is his participation suggested in any way. The statement makes reference to dropping Ms. Aquash off at a "safe house," but this house is never identified as Mr. Marshall's home, either by name, location, or description. The evidence appears to be that, although Ms. Aquash might have visited Mr. Marshall's home, she did not stay there, so Graham's statement would not have indicated that he had dropped Aquash off at Marshall's home. But even if the "safe house" mentioned by Mr. Graham in his statement can be linked to Mr. Marshall's home by referring to other evidence, that does not create a Bruton problem. See Richardson, 481 U.S. at 208-211 (an out-of-court statement that does not implicate the non-declarant co-defendant, but which becomes incriminating when linked with other admissible evidence introduced at trial, does not violate Bruton).

29

Mr. Marshall's statement to Mr. Ecoffey is also "testimonial." It does not name Mr. Graham, but indicates that late one night a car load of people showed up at Marshall's house. The people included Theda Clark and Ms. Aquash and "two young guys" who Marshall could not or did not name. Even when Ecoffey asked Marshall if the names "Arlo Looking Cloud" and "John Boy Graham" "rang a bell," Marshall still said he could not remember the names of the "two young guys." Although this statement *may* pose a <u>Bruton</u> problem if introduced as it is now written, it can easily be redacted to make sure that it is not interpreted by the jury to refer to Graham. For example, if Marshall's statement is changed to state that Clark, Aquash, and "some other people" or "others" who Marshall could not name came to his house, the jury could not reasonably interpret Marshall's statement to inculpate Graham. This is particularly true here where in all likelihood there will be a whole host of other actors discussed at the trial. <u>See Edwards</u>, 159 F.3d at 1125-1126 (replacing nondeclarant defendant's name with neutral pronouns eliminated <u>Bruton</u> problem and did not run afoul of the <u>Gray</u> decision because the evidence at trial included information about a number of actors from defendants' neighborhood in addition to information about the defendants themselves).

Mr. Marshall's grand jury testimony is also "testimonial," but--as when Marshall spoke to Ecoffey–Marshall never named Mr. Graham in his testimony. However, Marshall's responses, taken together with the prosecutor's questions,

probably fairly squarely implicate Mr. Graham.  The question becomes, then,

whether Mr. Marshall's testimony can be redacted so as to remove all reference

to Mr. Graham or even Mr. Graham's existence.  The court is confident that,

with the guidance provided by the case law discussed above, Mr. Marshall's

grand jury testimony can be redacted in such a manner as to remove all

reference to Mr. Graham and to his existence.  The majority of the redaction in

this case will be redacting the prosecutor's question, rather than Marshall's

answer.  A properly redacted statement, as well as a contemporaneous limiting

instruction from the district court telling the jury to consider Mr. Marshall's

testimony only as against Mr. Marshall, will serve to address any <u>Bruton</u>

problems inherent in Mr. Marshall's grand jury testimony.

The court also addresses one final statement not submitted to the court

by the government, but instead submitted to the court by Mr. Marshall.  It is a

"testimonial" statement of Mr. Ecoffey in an interview with Mr. Looking Cloud

*after* Looking Cloud had been indicted by the grand jury for Ms. Aquash's

murder.  In that interview, Ecoffey tries to get Looking Cloud to admit to having

been with Theda Clark, Mr. Graham, and Ms. Aquash at Dick and Cleo

Marshall's house.  Looking Cloud denies having stopped at Marshall's house.

In the face of Looking Cloud's denial, Ecoffey states, "[c]ause I know–I know for

a fact that you stopped there, cause both Dick and Cleo–are telling me that you,

[Graham], and Theda stopped there, and that you had Anna Mae, . . ."

Of course, having just reviewed Marshall's statement to Ecoffey, *Marshall never told Ecoffey* that Looking Cloud or Graham were at Marshall's house. Despite Ecoffey's persistent attempts, Marshall would not or could not identify either Looking Cloud or Marshall among those who came to his house–a story he repeated when he appeared in front of the grand jury.

One may wonder, then, if *Marshall* never told Ecoffey that Graham was at his house, why would Marshall himself wish to introduce Ecoffey's erroneous statement to the contrary during the Looking Cloud interview?  The answer is unclear.  Nevertheless, Marshall asserts that Ecoffey's erroneous statement during the Looking Cloud interview directly contradicts the exculpatory statements Mr. Graham made to Ecoffey.  An erroneous statement by a third party about a co-defendant's out-of-court statement does not create a <u>Bruton</u> conflict.  However, in an abundance of caution, the court holds that the Ecoffey–Looking Cloud interview, if it is to be introduced as evidence at trial, must be edited to redact Ecoffey's erroneous attribution of the statement to Marshall.[10]  For example, the statement can be redacted to read, "[c]ause I know–I know for a fact that you stopped there, cause Cleo–is telling me that you. . ."

---

[10]In his interview with Looking Cloud, Ecoffey may have been referring to what Marshall told cooperating witnesses, which differed from what Marshall told Ecoffey directly.  However, the court has already determined that Marshall's statements to cooperating witnesses are not "testimonial" and, thus, do not raise a <u>Bruton</u> problem.

In order that the district court may timely review the efficacy of the redacted versions of these statements, the court will require *any party* wishing to introduce one of these testimonial statements at trial to submit the redacted version of the statement to the district court a minimum of 15 days before the start of trial.

Finally, the court notes that merely because the court has reached the conclusion that the statements at issue in this case are nontestimonial, or if testimonial, are capable of redaction so as to eliminate a <u>Bruton</u> problem, does not end the inquiry as to their admissibility.  It simply removes one basis for objecting to the admission of the statements, that basis being the Confrontation Clause of the Sixth Amendment.  The proponent of any statement must still be prepared to meet objections to admissibility of these statements on other grounds.

### d.    Cautionary Note

Even where out-of-court statements are properly redacted and the court properly instructs the jury not to consider the statement against the non-declarant co-defendant, the prosecutor can still create <u>Bruton</u> error by emphasizing or implying that the statement incriminates the non-declarant defendant or otherwise linking the non-declarant defendant to the out-of-court statement.  <u>See</u> <u>Gray</u>, 523 U.S. at 193-194; <u>Richardson</u>, 481 U.S. at 211; <u>Davis</u>, 534 F.3d at 915 (citing <u>United States v. Long</u>, 900 F.2d 1270, 1280 (8th Cir. 1990)).  This is the have-your-cake-and-eat-it-too scenario whereby the

33

government submits a redacted statement that complies with <u>Bruton</u>, but then cannot resist attempting to use the redacted evidence to tie in the non-declarant co-defendant anyway.  <u>See e.g.</u> <u>Gray</u>, 523 U.S. at 188-189 (after introducing redacted statement of Bell from which Gray's name had been deleted, prosecutor then asked the detective if Bell's statement enabled the detective to arrest Gray); <u>Davis</u>, 534 F.3d 915-917 (holding up two redacted statements side-by-side during closing argument and drawing attention to their similarities).

Such actions create reversible error.  <u>Id.</u>  In such a case, the district court may still have to examine the <u>Bruton</u> issue at the close of the case if the prosecution raises this issue through its conduct at the trial, despite the submission of redacted statements to the jury and the court's limiting instructions to the jury.  <u>Id.</u>

## C.     Severance Due to Other Prejudice

Aside from the <u>Bruton</u> issue, Mr. Graham seeks severance because he alleges that evidence would be admitted at a joint trial that would not be admissible in a trial of Mr. Graham alone.  However, the only evidence discussed by Mr. Graham are Mr. Marshall's inculpatory statements, already discussed above.  This argument raises no new specter of prejudice other than that dispensed with above.

The only new argument presented by Mr. Graham is that Mr. Marshall's out of court statements do not fit within the definitional exclusion from hearsay

for statements of coconspirators.  Whether Mr. Marshall's statements fit within the definitional exclusion from hearsay found at Fed. R. Evid. 801(d)(2)(E) is a matter that must be raised as a motion *in limine* prior to trial, or by objection at trial.  It is not concerned with whether to grant severance other than through the confrontation clause issue already discussed.[11]

Mr. Graham and Mr. Marshall both argue that a joint trial will be prejudicial because Mr. Graham and Mr. Marshall will be presenting incompatible defenses.  Specifically, they allege that Mr. Marshall's defense will be that Marshall was not aware of any plan to kill Ms. Aquash at the time Marshall met with Graham, Clark and Looking Cloud and, moreover, that he did not provide the group with any assistance in carrying out the murder plan.  Mr. Graham, on the other hand, intends to defend by denying that any meeting ever took place that involved Mr. Graham in attendance.  Thus, according to the defendants, the jury would have to reject Marshall's defense in order to believe Graham's defense and vice versa.

Once joint trials are determined to be proper under Rule 8, as discussed above, the burden to demonstrate prejudice sufficient to warrant severance is a heavy one.  Flores, 362 F.3d at 1039-1040.  The movant must demonstrate severe or compelling prejudice.  Id. at 1039 (citing United States v. Pherigo, 327

---

[11]In any case, whether Mr. Marshall's statement is admissible is not determined alone by the applicability of Rule 801(d)(2)(E).  There are other exceptions to the hearsay rule which might very well come into play.

F.3d 690, 693 (8th Cir.), cert. denied, 539 U.S. 969 (2003)).  " 'The mere fact that one defendant tries to shift blame to another defendant does not mandate separate trials,' . . . as a co-defendant frequently attempts to ' " 'point the finger' to shift the blame, or to save himself at the expense of the other." ' " Flores, 362 F.3d at 1039-1040 (quoting United States v. Basile, 109 F.3d 1304-1309-1310 (8th Cir. 1997) (quoting United States v. Delpit, 94 F.3d 1134, 1143 (8th Cir. 1996)); United States v. Mason, 982 F.2d 325, 328 (8th Cir. 1993) (quoting United States v. Johnson, 944, F.2d 396, 403 (8th Cir. 1991))).  Just because a defendant's chances for acquittal are better in a separate trial is insufficient reason to justify severance of otherwise properly joined defendants.  Flores, 362 F.3d at 1040 (citing Delpit, 94 F.3d at 1143).

There is no reason to believe that Mr. Graham and Mr. Marshall's defenses are mutually antagonistic.  The jury may well conclude that the meeting, if it did occur, did not include Mr. Graham.  Furthermore, the jury may conclude, without prejudice to Mr. Graham, that Mr. Marshall did not provide any assistance toward the murder of Ms. Aquash, whether the meeting took place or not.  And Mr. Marshall's defense actually *helps* Mr. Graham in this sense:  if the jury believes that the meeting took place, but that Mr. Marshall was not aware of any plan to murder Ms. Aquash, as he is apparently going to assert, then it stands to reason that the jury would conclude that no discussion of murdering Ms. Aquash was engaged in by

36

anyone at the meeting.  Such a conclusion on the part of the jury would necessarily include a conclusion that *Mr. Graham* did not discuss murdering Ms. Aquash during the meeting either.  See Hood v. Helling, 141 F.3d 892, 896 (8th Cir. 1997) (mutually antagonistic defenses exist only where, in order to believe the core of one defendant's defense, the jury must necessarily disbelieve the core of the other defendant's defense).

Even if Graham and Marshall's defenses *are* mutually antagonistic, Mr. Graham is not automatically entitled to severance.  Flores, 362 F.3d at 1040.  Mr. Graham still has to show a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Id. (quoting Zafiro, 506 U.S. at 539).  This requires a showing that "evidence that would be inadmissible against one defendant if he were tried alone is admitted against his co-defendant, when many defendants are tried in a complex case with 'markedly different degrees' of culpability, . . . when a joint trial denies a defendant exculpatory evidence that would be available if he was tried alone. . . . [or] if there is a danger that the jury will unjustifiably infer that [the conflict in defenses] *alone demonstrates that both are guilty*." ' " Flores, at 1040 (quoting Zafiro, 506 U.S. at 539; Basile, 109 F.3d at 1310 (quoting Delpit, 94 F.3d at 1143) (emphasis in Delpit)).  In the final analysis, the court must assess whether "the jury will associate the guilt of one defendant to another defendant

or will be confused." Flores, 362 F.3d at 1041 (quoting United States v. Andrus, 775 F.2d 825, 849 (7th Cir. 1985)).

In Basile, the court held that, even assuming the defendants' defenses were "mutually antagonistic," nevertheless the defendants had not shown the kind of severe or compelling prejudice necessary to justify severance because the defendants could not show that each of their defenses was "irreconcilable with that of the co-defendant or that the jury was unable to compartmentalize the evidence." Basile, 109 F.3d at 1310. This was true even though one defendant's theory of the case was that a third party had stolen a car and killed the victim, while the other defendant admitted to stealing the car, but denied killing the victim. Id. at 1309.

Mr. Marshall raises the separate argument that evidence of the American Indian Movement ("AIM"), in particular association with that movement and acts of violence perpetrated by that movement, would be admissible against Mr. Graham, but not admissible against Mr. Marshall. Therefore, Mr. Marshall argues that the prospect of AIM evidence being admitted at a joint trial will prejudice him.

Evidence of AIM activities and associations was introduced at the trial of co-defendant Arlo Looking Cloud, an evidentiary issue that was raised in Looking Cloud's direct appeal to the Eighth Circuit. See United States v. Looking Cloud, 419 F.3d 781, 785-787 (8th Cir. 2005). Much of the AIM

evidence at Looking Cloud's trial was admitted without any objection by Looking Cloud.  Id.  Accordingly, much of the admission of AIM evidence was reviewed on appeal on a plain-error standard of review.  Id.  The Eighth Circuit's decision that the admission of such evidence was not plain error, or an abuse of discretion as to that evidence which Looking Cloud did object to, does not mandate the admission of such evidence in the Graham-Marshall trial.  Id.  Contrary to Mr. Marshall's assertion otherwise, whether AIM evidence will be admitted at the Graham-Marshall trial is a decision still committed to the district court's discretion, and is not a foregone conclusion.

Furthermore, Mr. Marshall never explains *why* evidence pertaining to AIM would be admissible against Mr. Graham and not against himself.  In holding that it was not plain error or an abuse of discretion to admit the AIM evidence at Looking Cloud's trial, the Eighth Circuit held that evidence of a defendant's affiliation with a movement and the actions of the movement are relevant to show motive and opportunity.  Id.  *If* AIM evidence would be admissible to prove Mr. Graham's motive and opportunity, it would seem to be similarly admissible to prove Mr. Marshall's motive and opportunity.[12]  Mr. Marshall has not made out a case for severance on the basis of his argument regarding AIM evidence.

---

[12]It is unclear whether Mr. Marshall was a "member" of AIM in any formal sense, but in his own words in his statements he certainly self-identified as an AIM sympathizer who attended many AIM rallies and events.

Mr. Marshall also argues that the government's case against him is not strong and, accordingly, he will be subject to spill-over prejudice by reason of being tried with Mr. Graham, who faces a stronger case against him. In particular, Mr. Marshall points to evidence under Fed. R. Evid. 404(b) that will be admissible against Mr. Graham and would not be admissible in a trial of Mr. Marshall alone. Mr. Marshall's characterization of the government's case against him as "marginal at best," is predicated on the fact that the government's case against Marshall rests "almost totally on the testimony of Fritz Arlo Looking Cloud."

Again, Mr. Marshall does not explain *why* the court should conclude that the government's case against him is "marginal" simply because it is based on the eye-witness testimony of a person who has been convicted of participating in the same crime with which Mr. Marshall is charged. However, assuming that the degree of culpability, or the strength of the government's case, is indeed disparate as between Graham and Marshall, that fact alone does not warrant severance, particularly when both defendants are charged with participating in the same criminal act. Hively, 437 F.3d at 765 (stating that, "[s]everance is never warranted simply because the evidence against one defendant is more damaging than that against another, . . .") (citing United States v. Pecina, 956 F.2d 186, 188 (8th Cir. 1992)). Instead, the defendant seeking severance must

40

show that the jury cannot reasonably be expected to compartmentalize the evidence.  Id.

In Hively, two lawyers who were partners in the same law firm were tried together.  Id. at 765-766.  Unsavory evidence of extortion was admitted at trial as to one of the defendants, but that evidence was not applicable to the defendant who had sought severance.  Id.  On appeal, the Eighth Circuit affirmed the district court's decision to try the defendants together, noting that no abuse of discretion had occurred.  Id. at 766.

In United States v. Pecina, a defendant in a drug conspiracy case argued that he should be tried separately because the most of the evidence pertained to his co-defendant and not to him.  United States v. Pecina, 956 F.2d 186, 188 (8th Cir. 1992).  The Eighth Circuit affirmed the district court's decision to hold a joint trial, noting that "[d]isparity in the weight of the evidence as between the two parties does not entitle one to severance."  Id. (citing United States v. Singer, 732 F.2d 631, 635 (8th Cir. 1984)).

In Delpit, seven defendants were tried together on, inter alia, drug conspiracy charges, which did not apply as to one defendant, and a murder-for-hire charge that did not apply to two of the defendants.  Delpit, 94 F.3d at 1142-1143.  The court held that trial of the two defendants who were not involved in the murder-for-hire scheme along with the defendants who were involved in the scheme was not an abuse of discretion.  Id.  The court observed

41

that, "[i]t doesn't matter that Larry Thomas and Jai Jones had nothing to do with the murder-for-hire plot, or that Delpit was not indicted for the drug conspiracy. . . . when violence is part of the conspiracy's *modus operandi*, 'charges stemming from that violence are properly joined with the conspiracy charges, even if not all members of the conspiracy participated in the violence.'" Id. at 1143. The <u>Delpit</u> court specifically rejected the argument of one self-described "minor player" defendant that he was prejudiced by the "spillover taint of the murder-for-hire charges" which did not pertain to him. Id.

Here, the impetus for a joint trial is even more weighty than in a drug conspiracy case. In a drug conspiracy case, the co-defendants may be held to answer for wide-ranging, often unrelated acts of the conspiracy as to which a particular member of the conspiracy may not even have been aware. Instead, in this case, Mr. Graham and Mr. Marshall are charged with committing or aiding and abetting in the commission of the same crime: the murder of Annie Mae Aquash.

Neither defendant has alleged enough, without more, to demonstrate the kind of "severe" or "compelling" prejudice necessary to warrant severance under Rule 14(a). Specifically, the court concludes that the two defendants' defenses are not mutually antagonistic and that there is no basis to believe that the jury cannot or will not compartmentalize the evidence against each defendant or that

42

the jury will become confused.  Accordingly, the court denies the motion on grounds of inadmissible evidence or incompatible defenses.

## CONCLUSION

Based on the foregoing discussion, it is hereby

ORDERED that John Graham's motion for separate trials [Docket No. 75], is denied.  It is further

ORDERED that Richard Marshall's motion for separate trials [Docket No. 87] is denied.  It is further

ORDERED that any party wishing to introduce at trial a testimonial out-of-court statement of either defendant that inculpates the other defendant, whether the statement is in the form of a writing, an audio recording, or a video recording, shall redact such statement to eliminate all reference to the other defendant and to his existence in accordance with this opinion and shall submit its proposed redacted statement to the district court for review no later than 15 working days prior to the start of trial in this case.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See Fed. R. Crim. P. 58(g)(2).

Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require review by the district court.

Dated December 27, 2008.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

44